IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES RAY DAUGHERTY, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:08-0695 |
| ) | Judge Nixon |
| INTERNATIONAL UNION, UNITED ) | Magistrate Judge Brown |
| AUTOMOBILE, AEROSPACE AND ) | |
| AGRICULTURAL IMPLEMENT WORKERS ) | JURY DEMAND |
| OF AMERICA, ("UAW") AND UNITED ) | |
| AUTOWORKERS LOCAL UNION 737, ) | |
| ("UAW LOCAL 737"), ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court is Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and United Auto Workers Local Union 737's ("UAW Local 737") (collectively, "Defendants") Motion to Dismiss ("Defendants' Motion"). (Doc. No. 10.) Plaintiffs James Ray Daugherty, et al. (collectively, "Plaintiffs") filed a Response in Opposition. (Doc. No. 20.) Defendants filed a Supplemental Memorandum in Support of Unions' Motion to Dismiss and in Opposition to the Plaintiffs' Motion to Amend Complaint (Doc. Nos. 27 & 30), to which Plaintiffs filed a Response in Opposition. (Doc. No. 33.) Defendants filed a Reply (Doc. No. 35), to which Plaintiffs filed a Surreply. (Doc. No. 37.) Upon motion, Plaintiffs filed their Third Amended Complaint ("Complaint") on December 18, 2008. (Doc. No. 23.) For the following reasons, Defendants' Motion is **GRANTED in part** and **DENIED in part.** In addition**,** Defendants' Motion is

-1-

**CONVERTED to a motion for summary judgment** and additional briefing is **ORDERED**.

## I.　BACKGROUND[1]

Plaintiffs are all former employees of the Ford Motor Company Glass Plant located in Nashville, Tennessee, and former members of United Auto Workers Local 737, the recognized collective bargaining agent for bargaining unit employees at the plant. Local 737 was an affiliate of the UAW International.

In October 2006, UAW representatives met with Local 737 members in Nashville. The representatives explained that the plant would be closing if Ford could not sell the plant and that the plant would not have any Ford employees in the building as of September 1, 2007. The UAW representatives told the workers they had two weeks to decide whether to accept a retirement package or transfer, otherwise Ford would have the right to layoff the workers. A layoff would mean the elimination of health insurance coverage and would affect retirement benefits and the amount of subpay possible. The retirement offer was characterized as a "one-time" opportunity. Plaintiffs contend that a plant in Tulsa, Oklahoma, was going through the same closing buy-out and the UAW and the Tulsa, Oklahoma local union did not characterize the retirement packages as "one time" to those employees or threaten them with the loss of health and retirement benefits. Beginning in November 2006, Plaintiffs signed up for the retirement packages and their retirement dates span from January 1, 2007 to July 1, 2007.

In mid-February, 2008, the employees who did not take the retirement packages and instead remained at the plant were offered retirement packages. Plaintiffs characterize those retirement packages and benefits as better than the packages offered in 2006 and 2007. Plaintiffs

---

[1] Unless otherwise noted, all facts are undisputed and taken from Plaintiffs' Third Amended Complaint. (Doc. No. 23.)

also assert that these remaining employees, a group that includes all the union officials, accumulated more time toward their retirement and seniority because they did not take the original retirement plan buy-outs. Plaintiffs filed a grievance with the union over what they perceive to be misrepresentations on the part of union officials regarding the circumstances of the 2006-2007 buy-out packages.

Plaintiffs claim that the UAW and Local 737 representatives misrepresented and coerced Plaintiffs into signing the earlier packages with the threat of loss of health insurance and retirement benefits. Plaintiffs assert that Defendants breached the duty of fair representation and that the actions of both the international and local unions were arbitrary, discriminatory, or in bad faith. Plaintiffs also state that Defendants had a statutory duty to fairly represent all of the employees both in collective bargaining, in enforcement of the collective bargaining agreement and in dealings with the buyout plans. Plaintiffs claim to have lost retirement benefits, wages, larger lump sum payments, seniority rights, better vacation times, holiday pay, and cost of living increases.

Plaintiffs bring this cause of action under Sections 301 and 9(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 185 and 159(a) (1947). In addition, Plaintiffs claim Defendants' actions constitute fraud, misrepresentation, and coercion in violation of Tennessee law. Plaintiffs assert this Court has jurisdiction under 28 U.S.C. § 1337 and pray for: full retirement benefits and other benefits as if they had continued to be employed at the Ford Glass plant and been offered the 2008 retirement plans; liquidated and punitive damages; pre-judgment interest; attorney's fees and litigation costs.

## II. JURISDICTION

As an initial matter, Defendants claim that this Court lacks subject matter jurisdiction over the present case. Defendants move to dismiss the entire Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). In relevant part, the Complaint states:

> Plaintiffs bring this cause of action against the local and national United Auto Worker's Unions pursuant to Section 301 and Section 9(a) of the Labor-Management Relations Act ("LMRA") 29 U.S.C. § 185 and 29 U.S.C. § 159(a) for violating Defendants' duties of fair representation for the Plaintiffs. Jurisdiction is conferred by 29 [sic] U.S.C. § 1337. The Court has pendant jurisdiction over the state law claims for fraud, coercion and misrepresentation.

(Doc. No. 23, at 2.) Section 301 states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Defendants state that jurisdiction is not proper under Section 301 of the Labor Management Relations Act because Plaintiffs do not allege any breach of contract or, alternatively, if Plaintiffs claim the second retirement packages violated an existing Collective Bargaining Agreement ("CBA"), as retirees they are no longer beneficiaries of that contract. Defendants characterize Plaintiffs' entire Complaint as a hybrid Section 301 over which a district court does not have jurisdiction. Plaintiffs assert that they are suing the unions on a fair representation claim under 28 U.S.C. § 1337 only and this is not a hybrid Section 301 suit. The Court agrees.

A hybrid Section 301 claim has two constituent parts described by the Sixth Circuit as "interdependent": a "breach of collective bargaining agreement and breach of a union's duty of fair representation." White v. Anchor Motor Freight, 899 F.2d 555, 559 (6th Cir. 1990); see also, Garrison v. Cassens Transp. Co., 334 F.3d 528, 538 (6th Cir. 2003). The Court continued:

-4-

"if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claim against the union must necessarily fail with it." Id. This is because district courts are only given jurisdiction over a thin slice of claims that may also fall under the auspices of the National Labor Relations Act ("NLRA"). See Breininger v. Sheet Metal Workers Int'l Assoc. Union No. 6, 493 U.S. 67, 74 (1989) ("as a general matter, neither state nor federal courts possess jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8 of the NLRA (citing San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959))). However, in Vaca v. Sipes, 386 U.S. 171 (1967), the Supreme Court refused to extend Garmon's preemption to suits alleging a breach of the duty of fair representation. 386 U.S. at 182 (distinguishing between the goals of national labor laws and the harm that might come to the individual worker whose bargaining rights have been supercede by the union, stating: "we cannot assume . . . that Congress, when it enacted N.L.R.A. s 8(b) in 1947, intended to oust the courts of their traditional jurisdiction to curb arbitrary conduct by the individual employee's statutory representative").

     Plaintiffs have not alleged a breach of the collective bargaining agreement between Ford and Defendants, nor have Plaintiffs alleged that Ford has breached the terms of the retirement packages Plaintiffs accepted. Rather, Plaintiffs assert that the Unions made misrepresentations regarding the retirement packages that induced the Plaintiffs to enter into unfavorable retirement offers. These claims concern the unions' activities, not those of the employer. Plaintiffs do not dispute that this Court would not have jurisdiction over a Section 301 claim and although the language regarding Section 301 remained through three amendments to their Complaint, Plaintiffs now seem to be claiming only a violation of Section 9(a) of the LMRA and jurisdiction

-5-

under 29 U.S.C. § 1331. (See Doc. No. 20, at 4.) District courts have jurisdiction over separate and cognizable breach of duty of fair representation claims brought under 28 U.S.C. § 1337. See 493 U.S. at 83 ("Federal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers.").

Defendants point to the following language for proof that the essence of Plaintiffs' Complaint is a hybrid Section 301 complaint against both the Unions and Ford: "Plaintiffs would state that the Unions had a statutory duty to fairly represent all of the employees both in its collective bargaining, in its enforcement of the collective bargaining agreement and in its dealings with the buyout plan." (Doc. No. 23, at 10.) This language is most logically construed as suggesting a breach of the Unions' duty to represent all of their employees equally in negotiations over the retirement packages, not a breach of the collective bargaining agreement or its terms. Plaintiffs have focused their claims on the Unions alone. Indeed, Ford is not a party to this case. Employer breach of a collective bargaining agreement is key to the hybrid Section 301 jurisdictional question. See 899 F.2d at 561 (in reviewing the case law, the Sixth Circuit found where courts have asserted jurisdiction under 29 U.S.C. § 1337, "the principal issue joined by the controversy arose from circumstances rooted in the relationship existing between a union member and his union, rather than in the relationship existing between a union member, his union, and his employer as forged through a collective bargaining agreement") (citations omitted).

The Court finds that this is not a hybrid Section 301 case. Those portions of Plaintiffs' claim that reference Section 301, 29 U.S.C. §§ 185, are hereby **DISMISSED**. However, the Court has jurisdiction to hear Plaintiffs' fair representation claims brought under Section 9(a) of

-6-

the LRMA, 29 U.S.C. §§ 159(a), and 28 U.S.C. § 1337.

## III.  STATUTE OF LIMITATIONS

Defendants argue that the statute of limitations bars Plaintiffs' federal claims.  A complaint based upon a union's breach of the duty of fair representation is subject to a six-month statute of limitations period.  29 U.S.C. § 160(b); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 155, 155 (1983) (adopting the six month statute of limitations period against both the employer and the union in a hybrid § 301 suit brought under the National Labor Relations Act); see also, Hill v. McCrabb, 19 Fed. App'x 314, at **2 (6th Cir. Sept. 14, 2001) ("The statute of limitations for bringing charges of unfair labor practices under the LMRA is six months."); Burkholder v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., et al., 299 Fed. App'x 531, 534 (6th Cir. Nov. 3, 2008).  The statute of limitations begins when a plaintiff "knows or should have known of the union's alleged breach of its duty of fair representation."  Schoonover v. Consol. Freightways Corp. of Delaware, 49 F.3d 219, 221 (6th Cir. 1995).

Plaintiffs filed this case on July 17, 2008.  Plaintiffs argue that they could not have known about the Unions' breach of duty until mid-February 2008, when the second group of retirees were offered the purportedly better retirement packages.  Defendants assert that the first retirement package was introduced in October 2007, with the last of Plaintiffs' retirements taking effect in July 2007; therefore even if the statute of limitations began on the last effective date of Plaintiffs' retirements, it would have expired on January 1, 2008.  Although Plaintiffs' claim centers on misrepresentations and coercion alleged to have occurred in fall 2007, Plaintiffs could not have known of a breach of duty, if any, until other union members were offered the second

-7-

retirement packages. Therefore, the Court finds Plaintiffs' federal claims to have been timely filed. Defendants' Motion to Dismiss Plaintiffs' federal claims as untimely is **DENIED**.

## IV. PLAINTIFF'S STATE LAW CLAIMS

Defendants argue that Plaintiffs' state law claims for fraud, misrepresentation, and coercion are preempted by their federal claims. Defendants assert that Section 301 completely preempts the state law claims. The Sixth Circuit has found, "[i]t is only when resolution of a state-law claim is *substantially* dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that the claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Brittingham v. Gen. Motors Corp., 526 F.3d 272, 278 (2008) (citations omitted) (emphasis in original). The Supreme Court has cautioned: "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results . . . ) is preempted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." Id. (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)). However, here the terms of the collective bargaining agreement are not at issue. Plaintiffs have not argued a breach of contract, but rather that Defendants breached their duty of fair representation and coerced Plaintiffs to enter into retirement packages against their interest. Because the resolution of the state law claim of fraud, misrepresentation, and coercion do not even relate to the terms of the collective bargaining agreement, Section 301 does not require preemption here. See 526 F.3d at 278.

Defendants also argue that Section 9(a) of the NLRA preempts Plaintiff's state law claims. Neither Plaintiffs nor Defendants can cite any Sixth Circuit case law specifically

-8-

addressing this issue, and the Court can find none. However, other circuits have specifically held that Section 9(a) preempts state law claims against a labor union for breach of the duty of fair representation. See BIW Deceived v. Local 56, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 830 (1st Cir. 1997) (union's duty of fair representation under NLRA section 9(a) preempts state law); Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1166-67 (5th Cir. 1989) (duty of fair representation arose from union's status as exclusive collective bargaining agent under the NLRA, therefore state law claims preempted under Vaca v. Sipes, 386 U.S. 171, 187-89 (1967)). Likewise, case law in our circuit, without specifically citing Section 9(a), points to preemption. See, e.g., Maynard v. Revere Copper Products, Inc., 773 F.2d 733, 735 (6th Cir. 1985) ("The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation. Whether union conduct constitutes a breach of the duty of fair representation is a question of federal law."). Plaintiffs cite to Wrobbel v. Aspludh Const. Corp., 549 F. Supp. 2d 868, 868 (E.D. Mich. 2008) for the assertion that: "the fact that the federal duty of fair representation is a *judicial* creation tends to undermine the argument that *Congress* intended § 9(a) to supplant state law with a federal cause of action." Id. at 875. However, the Wrobbel court addressed preemption in the context of a state discrimination statute, which had previously been determined by the Supreme Court and the Sixth Circuit as specifically not preempted, and ultimately rejected removal to federal court. Id. at 875-76.

Plaintiffs' state law claims of fraud, misrepresentation and coercion concerns the conduct at issue in the breach of duty claim, and these actions arise from the Unions' status as the Plaintiffs' exclusive bargaining agent and its representations to Plaintiffs about that bargaining.

-9-

Although analysis of these purported misrepresentations would not implicate the terms of the collective bargaining agreement, any fraud or coercion here concerns Defendants' intentional misrepresentation of a material fact related to its duty of representation.  See Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (elements of fraud claim under Tennessee law). Therefore, the Court finds that Plaintiffs' state law claims are preempted by their claims under Section 9(a).  Defendants' Motion as to these claims is **GRANTED** and the state law claims are therefore **DISMISSED**.

## V. STANDARD OF REVIEW FOR DEFENDANTS' 12(B)(6) CHALLENGE

Defendants filed the current Motion to Dismiss on September 3, 2008.  (Doc. No. 10.) On July 24, 2009, Defendants filed a Motion for Leave to File Supplemental Memorandum in Support of Motion to Dismiss and In Opposition to Plaintiffs' Motion to Amend Complaint (Doc. No. 27), attaching: a recent Western District of Oklahoma summary judgment order (Doc. No. 27-2); Affidavit of Joseph Gafa (Doc. No. 27-3); a Memorandum of Agreement between UAW and Ford Motor Company regarding restructuring (Doc. No. 27-4); a letter to Gerald D. Bantom, UAW National Ford Department Vice President and Director, from Mike Gelger, UAW Co-Chair, and Durinda Smith, Management Co-Chair, with Special Programs and Special Incentives details attached (Doc. No. 27-5); April 27, 2005 Memorandum to Mickey Bartlett from Geiger and Smith regarding Automotive Components Holdings (ACH) Understandings (Doc. No. 27-6); October 9, 2005 Letter to Bob King, UAW National Ford Department Vice President and Director, from Geiger and Smith regarding "ACH-LLC Understandings Special Programs-Special Incentives Including Flowback" (Doc. No. 27-7); January 11, 2008 letter to King from Bill Dirksen, Executive Director U.S. Labor Affairs, regarding "Ford-ACH-UAW

Memorandum of Understanding Nashville (including employees at the Carlite Warehouse) and Tulsa Glass Plants—Options for Ford Employees upon execution of this Memorandum of Understanding" (Doc. No. 27-8); and a Proposed Order (Doc. No. 27-9).

With the filing of their Supplemental Memorandum, Defendants introduced matters outside the pleadings. Per Federal Rule of Civil Procedure 12(d), if on a Rule 12(b)(6) motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1366 (3d ed. 2008). If the Court converts the motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d). Defendants argue that the Court need not convert the motion into one for summary judgment because the Gafa Affidavit and exhibits relating to the retirement packages are documents that are referenced in the pleadings and integral to Plaintiffs' claims. Plaintiffs object to the consideration of these additional documents without converting the motion and allowing Plaintiffs additional time to conduct discovery and respond.

Defendants contend that the retirement materials are referenced in the pleadings and integral to Plaintiffs' claims, therefore the Court need not convert this motion into one for summary judgment. Courts in this Circuit have considered contracts, EEOC charges, and other documents whose authenticity is not disputed without converting the motion. See, e.g., Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001) (district court should have considered EEOC charge attached as exhibit to complaint); Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514

-11-

(6th Cir. 1999) (district court properly considered insurance plans attached to motion to dismiss without converting to summary judgment because terms of plans central to claims, but illustration purportedly presented to plaintiff during negotiation was a matter outside the pleadings and not properly considered); Song v. City of Elyria, Ohio, 985 F.2d 840, 842 (6th Cir. 1993) (affidavits attached to plaintiff's complaint and a prior judgment properly considered by district court on motion to dismiss). However, although Plaintiffs refer to the retirement packages in their Complaint, Plaintiffs also dispute the 2006 discussions surrounding the presentation of those packages. It is within the sound discretion of the trial court to determine when conversion and additional briefing may be appropriate. See Wright & Miller, § 1366 ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion."). The Court does not find that disposition of this issue on a motion to dismiss is warranted in order to prevent a "plaintiff with a legally deficient claim" from surviving a motion to dismiss "simply by failing to attach a dispositive document." 108 F.3d at 89. Defendants' Motion to Dismiss these claims is therefore **DENIED** and the Court hereby **CONVERTS** Defendants' Motion into a motion for summary judgment.

Because the stay of discovery in this case was lifted on March 9, 2009 (see Doc. No. 26), and Plaintiffs have been aware of the potential conversion since the July 24, 2009 filing of Defendants' Supplemental Memorandum (Doc. No. 27), the Court hereby **ORDERS** the following additional briefing:

Defendants may re-file their motion to dismiss as a motion for summary judgment **on or before 30 days** from the entry of this Order.

-12-

Case 3:08-cv-00695    Document 38    Filed 03/31/10    Page 12 of 13 PageID #: 306

Plaintiffs may file a response to Defendants' Supplemental Memorandum **on or before twenty-one (21) days** from the filing of Defendants' re-filed motion or **on or before fifty-one (51) days** from the entry of this Order if Defendants do not re-file their motion.

Defendants may file a reply **on or before fourteen (14) days** from the filing of Plaintiffs' response.

VI.   **CONCLUSION**

Therefore, Defendants' Motion is **GRANTED in part** and **DENIED in part.** In addition, Defendants' Motion is **CONVERTED to a motion for summary judgment** and additional briefing is **ORDERED**.

It is so ORDERED.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT